IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| VICTORIA JOHNSON, ) | |
| ) | |
| Plaintiff and ) | |
| Counterclaim Defendant, ) | |
| ) | |
| v. ) | 1:09CV957 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant, Counterclaim ) | |
| Plaintiff, and Third- ) | |
| Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SAMMY E. JOHNSON, J. HUNTER ) | |
| SCHOFIELD, and MATTHEW SCHOFIELD, ) | |
| ) | |
| Third-Party Defendants. ) | |

**MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on the United States' Motion for Summary Judgment (Docket Entry 47) and the Motion of Victoria Johnson for Summary Judgment (Docket Entry 49), as well as for disposition of Plaintiff's counsel's Motion to Withdraw (Docket Entry 60). For the reasons that follow, the United States' Motion for Summary Judgment should be granted, the Motion of Victoria Johnson for Summary Judgment should be denied, and Plaintiff's counsel's Motion to Withdraw will be granted.

**Background**

In 1997, Plaintiff Victoria Johnson's ("Victoria's") husband, Sammy Johnson ("Sammy"), was fired from his job at Colonial Life & Accident Insurance Co. ("Colonial Life"). (See Docket Entry 48 at 2.) Sammy sued Colonial Life for breach of contract and wrongful discharge. (See Docket Entry 50 at 2.) After a lengthy legal proceeding, a jury awarded Sammy a judgment of $1,613,661.00 plus interest and costs in March 2006. (See Docket Entry 48 at 2; see also Docket Entry 48-6.) Sammy received a net award of $1,049,444.45 after legal fees and expenses, which he directed to be placed into his wife's checking account because (according to Sammy) "he wanted nothing to do with the money." (Docket Entry 50 at 3; see also Docket Entry 48 at 2-3.)

Roughly six months after Sammy's receipt of the funds (and the transfer to Victoria), Sammy and Victoria began to investigate whether the judgment award was taxable. (See Docket Entry 48 at 3; see also Docket Entry 48-4 at 66-67.) Sammy and Victoria first contacted an accountant who advised them that, in his opinion, the funds were taxable, but also suggested that they seek a second opinion. (See Docket Entry 48 at 4; see also Docket Entry 48-1 at 65-67; Docket Entry 48-4 at 66-67.) Sammy subsequently contacted a second accountant, Keith Pleasant ("Pleasant"), who advised Sammy that based on the recent opinion of the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in

Murphy v. United States, 460 F.3d 79 (D.C. Cir.), vacated, 2006 WL 4005276 (D.C. Cir. Dec. 22, 2006), a portion of the award may not be taxable. (See Docket Entry 48 at 3-4.) Pleasant advised Sammy to delay filing his tax return until the appeals process was complete with respect to the Murphy decision. (See id. at 4.) Accordingly, Pleasant prepared an extension request for Sammy's 2006 income tax return filing. (See id.)

After vacating its original decision in Murphy, the D.C. Circuit held that the funds at issue in that case were taxable. Murphy v. Internal Revenue Service, 493 F.3d 170 (D.C. Cir. 2007). Sammy then filed his 2006 income tax return reporting $1,021,024 of taxable income and an income tax owed of $358,223. (See Docket Entry 48 at 5.) Sammy, however, submitted a payment of only $1,000. (See Docket Entry 48 at 5.) The unpaid balance continues to accrue interest and penalties, which, as of May 15, 2011, resulted in Sammy owing $503,980.47 to the United States for the 2006 income tax year (see id.).

Upon the original transfer from Sammy to Victoria in March 2006, Victoria had deposited the funds into a money market account. (See id. at 6.) She subsequently used the funds in various ways, including to build the home where she and Sammy now live, to establish an investment account, and to make gifts to three of her children. (Id.; see also Docket Entry 48-4 at 56, 71-74.) In early 2008, Victoria, along with two of her children, J. Hunter

Schofield ("Hunter") and Matthew Schofield ("Matthew"), formed Schofield-Johnson, LLC ("Schofield-Johnson"). (See Docket Entry 48 at 6.) Victoria contributed nearly all of the entity's assets, including the home she built and the investment accounts she had established with the funds from Sammy's lawsuit. (Id.) Sammy has no ownership interest in Schofield-Johnson. (See Docket Entry 50 at 3.)

In July 2009, the United States Internal Revenue Service ("IRS") filed a nominee lien against Victoria and a separate lien against Schofield-Johnson for the debt owed by Sammy. (See id. at 5.) The IRS subsequently levied on Victoria's personal accounts at the State Employee Credit Union, from which the IRS eventually obtained over $20,000. (See id.) Victoria filed a Complaint in this Court alleging wrongful levy on the basis that she is not a nominee of Sammy. (Docket Entry 1.) The United States answered Victoria's Complaint (Docket Entry 14) and asserted a counter-claim against Victoria and a third-party claim against Sammy for fraudulent transfer (see id. at 14). After discovering that Victoria had transferred $25,000 to both Hunter and Matthew, the United States filed an Amended Counterclaim and Third-Party Complaint to include Hunter and Matthew in the fraudulent transfer claim. (See Docket Entry 24.)

In a separate action, Schofield-Johnson filed for bankruptcy protection, effectively staying the levies against it. (See Docket

Entry 50 at 5.) That case remains pending in the United States Bankruptcy Court for the Middle District of North Carolina. In re Schofield-Johnson, LLC, Case No. 09-81347 (Bankr. M.D.N.C.). Of particular relevance to the instant proceeding, Schofield-Johnson initiated an adversary proceeding in the bankruptcy action seeking "a judgment declaring that the levy by the IRS was wrongful and that its account may not be used to satisfy Sammy's individual tax liability." (See Docket Entry 59-1 at 1; see also Schofiel-Johnson, LLC v. United States of America, Commissioner of Internal Revenue Service, Adv. No. 09-09067 (Bankr. M.D.N.C.).) In response, the IRS sought "a ruling that Schofield-Johnson is merely the nominee of Sammy Johnson or that Sammy's transfer of certain funds to Victoria was fraudulent, and that therefore, the IRS may properly levy upon Schofield-Johnson's account to satisfy Sammy's tax liability." (See Docket Entry 59-1 at 1-2; see also Docket Entry 48 at 6.)

Trial was held in the adversary proceeding in August 2011. (See Docket Entry 59-1 at 1.) Thereafter, the bankruptcy court issued a Memorandum Opinion in which it determined that, in order to decide whether Schofield-Johnson was the nominee of Sammy, the bankruptcy court first had to analyze whether the transfer between Sammy and Victoria was fraudulent (see id. at 5). After concluding that state law provided the appropriate decisional authority for

that determination (see id.), the bankruptcy court looked to N.C. Gen. Stat. § 39-23.4(a), which states that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligations was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith intent to hinder, delay or defraud any creditor of the debtor.

After addressing each of the relevant factors provided in N.C. Gen. Stat. § 39-23.4(b) to determine intent, the bankruptcy court held that, "[s]ince the overwhelming majority of the factors favors the position of the IRS, . . . the transfer from Sammy to Victoria was fraudulent under North Carolina law." (Docket Entry 59-1 at 11.) Although that decision was subsequently appealed, see Schofield-Johnson, LLC v. Internal Revenue Service, 1:11-cv-00960 (M.D.N.C.), said appeal was ultimately withdrawn, see id., Docket Entries 14, 15, leaving the bankruptcy court's Memorandum Opinion as the final judgment in that matter.

In the instant action between Victoria and the United States, the Court is now asked to address Victoria's and the United States' cross-motions for summary judgment (see Docket Entries 47, 49), which, as discussed below, require findings nearly identical to those already determined by the bankruptcy court in the adversary proceeding between Schofield-Johnson and the United States. Under these circumstances, this Memorandum Opinion will evaluate whether either party is entitled to judgment as a matter of law on the following two issues: (1) is Victoria a nominee of Sammy; and

(2) was the transfer from Sammy to Victoria fraudulent under 28 U.S.C. § 3304(b).

## **Motions for Summary Judgment**

Under Fed. R. Civ. P. 56(a), "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering that question, the Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006).

*Victoria as a Nominee of Sammy*

The United States may enforce federal tax liens against property owned by a third-party that is a nominee or alter ego of a delinquent tax payer. G.M. Leasing Corp v. United States, 429 U.S. 338, 350-51 (1977). To decide if an individual qualifies as a nominee, the Court must first determine whether the delinquent taxpayer has any rights in the property under state law. Drye v. United States, 528 U.S. 49, 58 (1999); see also OMOA Wireless, S. De R.L. v. United States, No. 1:06CV148, 2010 WL 3199959, at *4 (M.D.N.C. Aug. 12, 2010) (Osteen, Jr., J.) (unpublished) ("The

-7-

initial inquiry in any case involving a federal tax lien is to determine what rights the taxpayer has to the property in question under state law.").

The Court, by way of opinion of Judge Osteen, Jr., previously has held that the state law of fraudulent transfers is the appropriate law by which to determine ownership status of property where the United States specifically pleads elements of that claim. OMOA Wireless, 2010 WL 3199959, at *5-6. Given that the United States has specifically pled such elements in the instant action (albeit in the context of the federal fraudulent transfer statute codified at 28 U.S.C. § 3304, rather than its state law counterpart), analysis of whether the transfer from Sammy to Victoria was fraudulent under N.C. Gen. Stat. § 39-23.4 represents the appropriate method for determining whether Sammy retains an ownership interest in the transferred funds. A finding that the transfer was fraudulent under state law (and that Sammy therefore retains ownership rights in the property) leads to the conclusions that Victoria qualifies as a nominee of Sammy and that the United States had authority to levy on her accounts. See OMOA Wireless, 2010 WL 3199959, at *9.

The specific issue of whether the transfer from Sammy to Victoria was fraudulent under state law was litigated and decided in the adversary proceeding related to the bankruptcy action of Schofield-Johnson. Because "'[t]he normal rules of res judicata

and collateral estoppel apply to the decisions of bankruptcy courts,'" Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P., No. 5:09-CV-352-F, 2010 WL 5477260, at *3 (E.D.N.C. Dec. 28, 2010) (unpublished) (quoting Turshen v. Chapman, 823 F.3d 836, 839 (4th Cir. 1987)), the Court must consider the applicability of the collateral estoppel doctrine to the instant proceeding.[1]

Collateral estoppel "operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction in the first litigation.'" In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (quoting Montana v. United

---

[1] Collateral estoppel was not (and, at the relevant time, could not have been) raised as an affirmative defense by the United States. (See Docket Entries 14, 24.) The United States Court of Appeals for the Fourth Circuit, however, has held:

> To be sure, certain affirmative defenses implicate important institutional interests of the court, and may sometimes be properly raised and considered sua sponte. For example, the affirmative defense of res judicata-which serves not only 'the defendant's interest in avoiding the burden of twice defending a suit,' but also the important judicial interest in avoiding resolution of an issue that the court has already decided-may, in 'special circumstances,' be raised sua sponte. Arizona [v. California], 530 U.S. 392, 412-13, 120 S. Ct. 2304, 147 L. Ed.2d 374; see also Doe v. Pfrommer, 148 F.3d 73, 80 (2d Cir.1998) (concluding that policy of "avoiding relitigation" justified sua sponte consideration of defense of collateral estoppel).

Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006). Given the identity of issues between the instant case and the adversary proceeding, the privity of interest of the parties, and the inability of the United States to raise this issue as an affirmative defense at the pleading stage due to the procedural posture of the bankruptcy proceeding at that time, addressing this issue *sua sponte* is appropriate in the instant action. See, e.g., Saudi v. V. Shp Switzerland, S.A., 93 Fed. Appx. 516, 520-21 (4th Cir. 2004) ("[G]iven the indisputable privity of the parties and the identity of the issues between the instant case and the case upon which the res judicata holding rested, we believe that sua sponte invocation of the bar was permissible.")

States, 440 U.S. 147, 153 (1979)). Its application is appropriate where:

> (1) the issue sought to be precluded is identical to the one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998).

The record before the Court satisfies all of the above criteria. First, the bankruptcy court examined the discrete issue of whether the transfer from Sammy to Victoria was fraudulent as to the United States under N.C. Gen. Stat. § 39-23.4. (See Docket Entry 59-1 at 5-11 ("The [bankruptcy court] should first consider whether the transfers at issue were fraudulent . . . .").)

Second, said issue was actually determined in that action. After addressing the relevant factors to determine intent under N.C. Gen. Stat. § 39-23.4(b), the bankruptcy court found explicitly "that the transfer from Sammy to Victoria was fraudulent under North Carolina law." (Docket Entry 59-1 at 11.)

Third, determination of that issue was critical to the bankruptcy court's ultimate conclusion that Schofield-Johnson is a nominee of Sammy. The bankruptcy court noted that the IRS's "nominee claim should be considered together with its fraudulent

-10-

conveyance claim." (Id. at 5.) Accordingly, the bankruptcy court decided it "should first consider whether the transfers at issue were fraudulent in order to determine whether Sammy retains any property rights in the [j]udgment [p]roceeds that are now in possession of Schofield-Johnson. If the transfers are fraudulent – and therefore Sammy still retains property rights in the proceeds – Schofield-Johnson may be the nominee of Sammy and the IRS may enforce its lien and levy [against Schofield-Johnson]." (Id.)

Fourth, given the withdrawal of the appeal of the bankruptcy court's Memorandum Opinion as described above, see discussion supra p. 6, that decision stands as the final judgment in the matter.

Fifth, as to the requirement that "the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum," Sedlack, 134 F.3d 219, 224, "[i]t is important to note in this regard that collateral estoppel binds not only the parties to the underlying case, but also those in privity with them," Universal Furniture Intern., Inc. v. Frankel, No. 1:08CV395, 2011 WL 6843001, at *4 (M.D.N.C. Dec. 29, 2011) (Osteen, Jr., J.) (unpublished) (citing Weinberger v. Tucker, 510 F.3d 486, 491 (4th Cir. 2007)). "The test for privity is 'whether the interests of one party are so identified with the interests of another that representation by one party is a representation of the other's legal right.'" Id. (quoting Weinberger, 510 F.3d at 491); see also Weinberger, 510 F.3d at 492

("The concept of privity requires an alignment of interests and not an exact identity of parties.").

In the instant case, Victoria, Sammy, Hunter and Matthew are in privity of interest with Schofield-Johnson - the relevant party in the bankruptcy action. As an initial matter, Schofield-Johnson is owned solely by Victoria, Hunter and Matthew, who, accordingly, had the ability to control its litigation of the adversarial proceeding. (See Docket Entry 48-4 at 47-48.) Sammy, although not an owner of Schofield-Johnson, shared an identical interest with that party with respect to the fraudulent transfer. See Jones v. SEC, 115 F.3d 1173, 1178 (4th Cir. 1997) ("[T]he privity requirement assumes that the person in privity is so identified with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." (internal quotation marks and citation omitted)). Furthermore, given that nearly all of the funds from Sammy's judgment are now held by Schofield-Johnson and that Sammy was essentially judgment proof given his lack of assets, Schofield-Johnson was an appropriate party to adequately represent those interests, and did so with the same legal counsel that Sammy and Victoria retained in the instant action. Accordingly, on these facts, the fifth factor for a finding of collateral estoppel is satisfied, and the Court should conclude that the transfer from Sammy to Victoria was

fraudulent under N.C. Gen. Stat. § 39-23.4 based on the findings of the bankruptcy court.[2]

As a remedy for a fraudulent transfer, state law allows a creditor to avoid the transfer "to the extent necessary to satisfy [its] claim." N.C. Gen. Stat. § 39-23.7. Therefore, Sammy is considered to have ownership rights to the transferred funds for the purpose of the United States collecting its debt, see OMOA Wireless, 2010 WL 3199959, at *7, such that Victoria qualifies as Sammy's nominee. Accordingly, the levy on Victoria's account was not wrongful. See id. ("[S]ince Mr. Boggs retains ownership rights to the properties under North Carolina law in regard to his debts, the nominee or alter ego liens against the properties are proper under 26 U.S.C. § 6321 (2006) . . . .").

*Fraudulent Transfer Under 28 U.S.C. § 3304(b)*

Although the foregoing discussion resolves Victoria's wrongful levy claim by examining whether the transfer from Sammy to Victoria was fraudulent under N.C. Gen. Stat. § 39-23.4 (making her a nominee), resolution of the United States' counter-claim against Victoria, Sammy, Matthew and Hunter for fraudulent transfer under 28 U.S.C. § 3304(b) requires further consideration. The doctrine

---

[2] North Carolina law provides that "[a] transfer or obligation is not voidable under G.S. 39-23.4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." N.C. Gen. Stat. § 39-23.8(a). Victoria has not asserted that she took "in good faith and for a reasonably equivalent value," id. (See Docket Entries 48, 52, 58.) Moreover, the record establishes that Victoria received the funds gratuitously from Sammy. (See Docket Entry 50 at 3 ("Sammy held no monies back for himself and gave the [p]roceeds to his wife unequivocally and absolutely.").)

-13-

of collateral estoppel, however, remains relevant on this issue as well. Indeed, the prior analysis, see discussion supra, pp. 10-13, applies verbatim, with the exception that further attention is warranted to whether application of the state law of fraudulent transfers adequately addresses the issues relevant to a claim brought under the federal counterpart.

The relevant state and federal statutory provisions regarding fraudulent transfer are nearly identical. Compare N.C. Gen. Stat. § 39-23.4 with 28 U.S.C. § 3304(b). North Carolina law provides in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith intent to hinder, delay, or defraud any creditor of the debtor.

N.C. Gen. Stat. § 39-23.4(a).

Similarly, the federal statute states:

> [A] transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation . . . with actual intent to hinder, delay, or defraud a creditor.

28 U.S.C. § 3304(b).

Furthermore, both provisions contain an exception to the ability to avoid such a transfer in the case of a person "who took in good faith and for a reasonably equivalent value or against any transferee or obligee." N.C. Gen. Stat. § 39-23.8(a); 28 U.S.C.

-14-

§ 3307(a). In addition, both statutes provide a list of factors pertinent to a determination of intent. See N.C. Gen. Stat. § 39-23.4(b); 28 U.S.C. § 3304(b)(2). The North Carolina statute encompasses all of the factors listed in the United States Code, but also includes two additional items. See N.C. Gen. Stat. § 39-23.4(b)(12), (13). As neither list is exclusive, see N.C. Gen. Stat. § 39-23.4(b); 28 U.S.C. 3304(b)(2), this distinction is immaterial.

Based on the similarity of the two statutes, no basis exists for this Court to find differently when applying 28 U.S.C. § 3304(b) than the bankruptcy court did when it applied N.C. Gen. Stat. § 39-23.4. In other words, the bankruptcy court analyzed the discrete issue of whether the transfer between Sammy and Victoria was fraudulent (for the purposes of deciding if a fraudulent transfer occurred under N.C. Gen. Stat. § 39-23.4) in a fashion that directly addresses the issue presented in the instant action (as to whether a fraudulent transfer occurred within the meaning of 28 U.S.C. § 3304(b)).

Given a finding that the transfer between Sammy and Victoria was fraudulent, the United States is entitled to a judgment against Victoria, Sammy, Matthew and Hunter on its fraudulent transfer counter-claim. Specifically, in the case of a fraudulent transfer, the United States:

> may recover a judgment for the value of the asset transferred, but not to exceed the judgment on a debt. The judgment may be entered against--
>
> (1) the first transferee of the asset or the person for whose benefit the transfer was made; or
>
> (2) any subsequent transferee, other than a good faith transferee who took for value or any subsequent transferee of such good-faith transferee.

28 U.S.C. § 3307(b). As the entirety of Sammy's judgment was transferred to Victoria as the first transferee, the United States may seek from Victoria the entirety of Sammy's debt under 28 U.S.C. § 3307(b)(1). Furthermore, because the evidence shows that Matthew and Hunter each received $25,000 without giving reasonably equivalent value, to the extent Victoria cannot satisfy the debt, the United States may seek payment from Matthew and Hunter up to that amount. 28 U.S.C. 3307(b)(2).

### **Motion to Withdraw**

As a final matter, Plaintiff's counsel has filed a Motion to Withdraw as counsel for Victoria and Sammy. (Docket Entry 60.) In support of said motion, Plaintiff's counsel has asserted that Victoria and Sammy "have advised [Plaintiff's counsel] that they no longer wish for [Plaintiff's counsel] to represent them" in this action. (Id., ¶ 2.) The motion further notes that Plaintiff's counsel and Victoria/Sammy "have had significant and apparently irreconcilable differences in handling the next phase" of this action. (Id., ¶ 3.) Under these circumstances, Plaintiff's counsel's motion will be granted.

## Conclusion

Because the discrete issue of whether the transfer of funds from Sammy to Victoria was fraudulent under N.C. Gen. Stat. § 39-23.4 has been previously litigated before and decided by the United States Bankruptcy Court for the Middle District of North Carolina, this Court should not re-decide that issue.  Given that finding, Sammy is considered to have an ownership interest in the transferred funds such that Victoria qualifies as his nominee and the United States' levy on Victoria's accounts thus was proper. See <u>OMOA Wireless</u>, 2010 WL 3199959, at *7.  Furthermore, in light of the nearly identical language of N.C. Gen. Stat. § 39-23.4 and 28 U.S.C. § 3304(b), the bankruptcy court's prior decision under state law addresses the same issue raised under the federal fraudulent transfer statute.  As a result, collateral estoppel warrants judgment for the United States on its counter-claim against Victoria, Sammy, Matthew and Hunter, under the provisions of 28 U.S.C. § 3307(b).

**IT IS THEREFORE ORDERED** that the Motion to Withdraw (Docket Entry 60) is **GRANTED**.

**IT IS RECOMMENDED** that the United States' Motion for Summary Judgment (Docket Entry 47) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Motion of Victoria Johnson for Summary Judgment (Docket Entry 49) be **DENIED**.

                                                <u>/s/ L. Patrick Auld</u>
                                                     L. Patrick Auld
                                       United States Magistrate Judge

January 17, 2012